COWELL, RESPONDENT, v. MAY ET AL., APPELLANTS.

(No. 1,379.)

(Submitted November 19, 1901.  Decided December 9, 1901.)

*Garnishment—Contingent Liability—Liability of Garnishee—Evidence—Findings—Supplemental Findings.*

1.  In order to charge a garnishee, there must be at the time of the service a debt due or to become due, and not a contingent liability or a conditional contract merely.
2.  One whose land had been sold under foreclosure, and against whom a deficiency judgment had been entered, contracted to sell his equity to the purchaser on the foreclosure for a certain sum, if the purchaser would secure and deliver to the debtor a receipt from the judgment creditor for all sums due him from the debtor.  The debtor executed a deed, and deposited it in escrow, to be delivered to the purchaser on the delivery of the receipt, and the payment of the balance of the purchase price, $10 being paid at the time.  Prior to any delivery of the receipt or any waiver of the same on the part of the debtor, the execution purchaser was served with garnishment process at the suit of the judgment creditor.  *Held*, that the purchaser was not liable, his liability to the debtor having been merely contingent.
3.  Implied findings may supplement, but they cannot be allowed to contradict, express findings.
4.  It was proper to admit evidence showing that after service of the garnishment process, the deed in escrow was destroyed, and another one made, and the entire consideration paid, for the purpose of showing what the original terms of the contract were at the time the process was served.
5.  The trial court having found the facts as to the contract as originally made, and that there had been no delivery of the receipt, or waiver thereof, findings to the effect that the destruction of the deed in escrow after service, and the giving of another deed, and the payment of the consideration, were for the purpose of evading the garnishment process, could not aid the plaintiff.

*Appeal from District Court, Ravalli County; F. H. Woody, Judge.*

ACTION by Charles L. Cowell against Albert May and George May, co-partners under the firm name and style of May Brothers.  From a judgment in favor of plaintiff, defendants appeal.  Reversed.

*Mr. C. B. Calkins,* for Appellants.

*Mr. Frank Woody,* for Respondent.

MR. JUSTICE PIGOTT delivered the opinion of the court.

The defendants puchased at sheriff's sale under a decree of foreclosure, the land of one Harris. Upon the coming in of the sheriff's return, on the 8th day of July, 1897, a deficiency judgment for $290 was docketed in favor of Cowell, the plaintiff in that action and also the plaintiff in this, and against Harris, the defendant therein. On the 10th day of July, 1897, the defendants, being desirous of obtaining immediate possession of the land so purchased by them, entered into negotiations with Harris, they offering to pay him for his equity of redemption the sum of $350, and Harris promising to convey for that price if he could get a receipt from the plaintiff in full of all demands. On the next day Harris signed and acknowledged a deed therefor and left it in the possession of one Calkins upon the express condition, agreed to by the defendants, that he should not deliver it until the defendant Albert May delivered to Calkins a receipt in full of all claims and demands which the plaintiff held against Harris. The condition in respect of the receipt was shown to have been for the benefit of Harris only, the performance of which he might waive. There was no evidence tending to prove that the defendants, or either of them, promised to procure or deliver the receipt. The receipt was never obtained. At the time the deed was signed the defendants paid $10 to Harris on the purchase price. Thereafter, but on the same day, the plaintiff caused the sheriff to serve upon the defendants a copy of the writ of execution issued upon the deficiency judgment, together with a notice that any debts owing by them to Harris were attached. The defendants made answer to the garnishment by denying that they were, or that either of them was, indebted to Harris. On the 13th day of July, 1897, Calkins, with whom the deed had been left in escrow, prepared another deed in which Harris was named as the grantor and the defendants as the grantees, conveying the same property described in the first deed. In company with one of the defendants, Calkins went to the ranch of

Harris, returned to him the first deed, and requested him to sign, acknowledge and deliver the second one. This he did, and the defendant who was then present paid to Harris $340, the remainder of the purchase price. Thereafter the court, by an order to that effect, authorized the plaintiff, who, as we have said, was the judgment creditor of Harris, to institute an action against the defendants for the recovery of the alleged debt owing by them to Harris; whereupon this action was commenced under the provisions of Section 1266 of the Code of Civil Procedure. The complaint states the formal matters required in an action of this character, and alleges that at the time of the service of the copy of the execution and of the notice on the defendants, they were indebted to Harris in the sum of $340, and prays for judgment that the defendants be compelled to pay to the plaintiff a sufficient amount therefrom to satisfy his judgment against Harris. The defendants by answer denied that at the time of the garnishment they, or either of them, were, or was, indebted to Harris in any sum whatever. In this statement are set out such facts as we deem relevant to the only question necessarily presented on the appeals; what other matters the evidence may have tended to prove need not be recited. The court found for the plaintiff and rendered judgment in his favor. From the judgment and order refusing a new trial the defendants prosecute these appeals.

The single question upon which the case as presented to this court must be decided, is whether or not the defendants were indebted to Harris at the time the garnishment was served upon them. The court made special findings of fact, the fourth and fifth of which are as follows: "Fourth. That on the 10th day of July, 1897, when the notice of garnishment was served on the defendants, the said Benjamin N. Harris had executed a quitclaim deed of his equity of redemption to a tract of land to said May Brothers, for a valuable consideration upon the following conditions, to-wit: Said Harris placed said deed in the hands of C. B. Calkins, and at the same time instructing said Calkins not to deliver said deed to said May Brothers, until

Albert May, one of the firm of said May Brothers, should deliver to said Calkins a receipt in full of all claims and demands which one Charles L. Cowell had and held against said Harris, and that upon the delivery of said receipt, the said Calkins was to deliver said deed to May Brothers, they paying to said Harris a balance of $340, they, May Brothers, having already paid to said Harris $10 at the time of the execution of said deed. Fifth. That said Albert May did not procure said receipt from said Cowell, or attempt so to do." Both parties agree that these findings are correct, and although implied findings may supplement they cannot be allowed to contradict express findings.    Under the evidence it is unquestionable that there was a contract entered into between May Brothers and Harris for the purchase and sale of the equity of redemption. It is equally true that, under the fourth finding, the stipulations in the contract were mutual and dependent, and the liability of the defendants conditional,—in other words, they would not become indebted to Harris unless and until Albert May delivered to Calkins a receipt in full running from Cowell to Harris, or Harris waived such delivery.  The defendants did not expressly promise to obtain or deliver the receipt, nor did any legal duty or obligation so to do rest upon them, or either of them.   To get it might have been impossible.   If they did not get it and Harris did not waive the fulfillment of this condition, the executory contract of sale would fall and there could be no cause of action in favor of Harris against the defendants arising out of the nonpayment of the purchase price.   They had, it is true, agreed with Harris to make the purchase and to pay him $350, and they had paid him $10 of the price, but that agreement was subject to the condition just mentioned. Unless the fulfillment of the condition was waived by Harris, the delivery of the receipt was a condition precedent to the existence of a debt.   The procurement and delivery of the receipt was an act which Harris required to be done for his benefit, and for his benefit only; and if Albert May had delivered the receipt to Calkins, then Harris would have possessed the

right (perhaps without a formal demand of payment, but in any event after such demand) to maintain an action against the defendants for the unpaid purchase price; but until the receipt was delivered, or until Harris waived its delivery, there was no indebtedness owing by the defendants to Harris. Such was the condition at the time the garnishment was served. Harris might have waived the performance of the the condition precedent to the defendants' liability, and this waiver would have created a liability certain, the right to enforce which would have inured by subrogation to the plaintiff; but Harris did not do so until after the defendants were served. Although the immaturity of a debt at the time of garnishment is, of itself, unimportant in so far as the ultimate liability of the garnishee is concerned, yet, in order to charge him, there must be an existing debt at the time of the service,—a contract under which a debt may or may not arise is not sufficient. There must be at the time of the service a debt due or to become due, and not a contingent liability or a conditional contract merely. "The debt from the garnishee to the defendant, in respect of which it is sought to charge the former, must moreover be absolutely payable, at present or in future, and not dependent on any contingency. If the contract between the parties be of such a nature that it is uncertain and contingent whether anything will ever be due in virtue of it, it will not give rise to such a credit as may be attached; for that cannot properly be called a debt which is not certainly and at all events payable, either at the present or some future period." (Drake on Attachment, 7th Ed. Sec. 551.) Except in so far as the necessity of making a demand for payment (if such necessity would have existed) is concerned, the plaintiff stands in no better position than Harris; the former was subrogated to the rights of the latter. The question whether the defendants are liable to the plaintiff may be tested by inquiring whether Harris, without waiving his right to the receipt from Cowell, could have maintained an action against May Brothers at the time of the garnishment. Let it be supposed that Harris had sued the defend-

ants on July 10, 1897, to recover judgment for $340, alleging the matters stated in findings four and five, a demand and a refusal on the part of the defendants to pay the money or deliver the receipt, and that he did not waive the performance of the condition touching the receipt, but would insist upon the performance of that condition as prerequisite to the delivery of the deed; is it not apparent that the complaint would be demurrable for want of substance? Or if the plaintiff had brought the present action while the original contract was in force and before the transaction of July 13, is it not perfectly clear that the defendants would prevail because at the time of the garnishment they did not owe a debt to Harris? Again, let it be supposed that the defendants, upon being garnished, paid to the sheriff the remainder of the purchase price, as they may do under Sections 900, 903, 1218, and 1262 of the Code of Civil Procedure (if they are indebted to the principal defendant), and thereupon had demanded of Harris the delivery of the deed, asserting that they had fully performed the conditions on their part; could the defendants compel Harris specifically to perform the contract by delivering the deed of conveyance? Would not the court declare that the payment to the sheriff was not the liquidation of any debt owing by the defendants to Harris, but was merely voluntary? We think such would be the case. The plaintiff is in no better situation than Harris would have been under the circumstances suggested in the first example. For aught that appears, the receipt required by Harris might never be obtained; if not obtained by the defendants or waived by Harris, there could be no liability of the defendants to him under the terms of the original contract. The case of *Baltimore & Ohio Railroad Company* v. *McCullough & Company,* 12 Grattan, 595, wherein the court held the garnishee not liable, involves the consideration of a question identical in principle with the case at bar.

Other special findings have to do with the conduct of the defendants and Harris after the service of garnishment. Among them is one that there was no new bargain on July 13 when the

old deed was surrendered, the new deed delivered and the payment made, and that the transaction of that date was for the purpose of avoiding the effect of the garnishment of July 10. In passing we remark that the first part of this finding conflicts with the fourth finding, for Harris delivered the new deed and accepted payment without requiring the defendants to comply with the condition of the first contract touching the receipt from Cowell; and as to the latter part of the finding, we observe that the motive imputed may have existed, but if the fourth and fifth findings be correct there was no debt attached by the process of garnishment. With respect to this finding and all other findings subsequent to the fifth, it is sufficient to say that, while evidence of the facts to which they relate was admissible because of its tendency to prove what the terms of the contract of July 10 were and whether there was an indebtedness owing by the defendants to Harris at the moment of service, they cannot, in view of the fourth and fifth findings, subserve any purpose. It was for the court below to draw from all the evidence the inferences of fact and declare what the contract was and whether a debt existed. The only legitimate conclusion ultimately deducible from findings four and five is that the contract to purchase was conditional and the liability of the defendants contingent; that at the time of the garnishment the condition upon which depended the liability of the defendants for the remainder of the purchase price had not been performed by them or waived by Harris, and hence that there was no debt.

Under the findings, we must therefore hold that at the time of the garnishment the defendants were not indebted to Harris, and hence that there was no debt attached by the process of garnishment.

For these reasons the judgment and the order appealed from are reversed and the cause is remanded for a new trial.

*Reversed and remanded.*