No. 13878

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

———————————

M.V. "S" SMITH,

Plaintiff and Respondent,

-vs-

SAM T. FOSS and ALICE I. FOSS,

Defendants and Appellants.

———————————

Appeal from:  District Court of the Fourth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellants:

Curtis C. Cook argued, Hamilton, Montana

For Respondent:

Harold L. Holt argued, Missoula, Montana

———————————

Submitted:  June 9, 1978

Decided: JUL 2 0 1978

Filed: JUL 2 0 1978

*Thomas J. Kearney*
                    Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant appeals from an order of the District Court, Ravalli County, entered on April 8, 1977. In this order the court "clarified" its earlier order of October 6, 1975, regarding the testing procedure to be used to determine the organic content of peat material.

Plaintiff in the present suit is M. V. "Si" Smith and defendants are Sam T. and Alice I. Foss, husband and wife, and their son, John. In 1968, this Court held that Smith's lessor was entitled to extract peat from Foss's property and to the use of surface lands reasonably necessary or incidental to the extraction of peat. State ex rel. Foss v. District Court (1968), 152 Mont. 73, 446 P.2d 707.

Peat basically consists of organic material, minerals (reduced to ash when tested), and water. Because the water content of peat can be easily changed (e.g. by flooding or drying), the percentages of organic material and ash can vary drastically.

Smith filed this present suit in September, 1972, alleging that the Fosses deliberately flooded the peat deposits and access thereto, which prevented Smith from selling any peat. He sought actual and exemplary damages. In November, 1974, the District Court entered findings of fact and conclusions of law finding that the Fosses had deliberately and maliciously prevented Smith from harvesting and selling peat. The District Court awarded Smith both actual and exemplary damages. Judgment was entered accordingly.

In its findings and conclusions, the court determined that Smith was entitled to harvest peat which was " sixty (60) percent or more organic material as determined by a heat or ignition test." (Finding No. XI, Conclusion No. 3, Nov. 19, 1974). This determination resulted in further controversy between the parties.

- 2 -

The new controversy surrounded the testing procedure to be used to determine the organic content of peat. The October 6, 1975 order was an attempt to end this controversy. In that order, the court specified that the testing procedure to be used was the "ignition method for testing 'peat' as set forth in the Official Methods of Analysis of the Association of Official Analytical Chemists, (AOAC), 11th Edition, 1970." The court adopted this testing procedure because the parties had agreed to use this testing method.

However, this order did not end the controversy between the parties. Controversy arose then as to whether the court's order meant that the samples were to be tested "air dried" or "as received" (not allowing for moisture evaporation). Using the "air dried" method, the samples tested averaged well above 60 percent organic matter. Using the "as received" method, none of the samples were above 60 percent.

As a result of this further controversy, Smith, on May 4, 1976, moved the District Court to amend its order of October 6, 1975, to specify that the testing should be conducted on air-dried samples. On April 8, 1977, the court entered an order finding that its earlier order of October 6, 1975, was ambiguous and that the time limitations of Rules 59 and 60, M.R.Civ.P., did not apply to this proceeding. The court then "clarified" its earlier order by specifying that the samples should be air-dried prior to testing. Thereafter, defendants brought this appeal.

On appeal, defendants have raised four issues which may be summarized into one: Whether plaintiff's motion to amend, filed on May 4, 1976, was barred by the time limits in Rules 59 and 60, M.R.Civ.P., which would deprive the District Court of jurisdiction to amend the October 6, 1975 order?

Defendants' position is that the District Court's order of April 7, 1977, amended the October 6, 1975 order. They argue that this was an impermissible amendment because plaintiff did not move to amend within the time limits of Rule 59, M.R.Civ.P. Further, they argue that plaintiff's motion was not timely under Rule 60, which deals with vacating judgments. Defendants maintain that since the October 6, 1975 order was a final order the time limits in the rules must be adhered to in order to put an end to litigation.

On the other hand, plaintiff argues that the October 6, 1975 order was an interlocutory order that simply decided the testing procedure to be used. He argues that, since it was an interlocutory order, the time limits in Rules 59 and 60, M.R.Civ.P., have no application. Further, he argues that the court had the authority to clarify any ambiguity in the October 6, 1975 order. He contends that the April 7, 1977 order clarified the ambiguity in the October 6, 1975 order.

We hold that the District Court's order of October 6, 1975 was an interlocutory order. In that order, all the court did was approve the testing procedure the parties had agreed upon. The court was not making any final determination of the dispute between the parties because it had done so in the judgment of November, 1974.

In the judgment, the court had said that plaintiff " * * * may remove peat of all types and varieties [from defendants' property], which is sixty (60) percent or more organic material as determined by a heat or ignition test". The District Court's order of October 6, 1975, was entered to enforce this judgment. This order set out a procedure for determining if the peat, which was being removed, was 60 percent organic. Thus,

this order was not a final order, but an interlocutory order to enforce the earlier judgment.

After the October 6, 1975 order was entered establishing a testing procedure, the parties disagreed over that testing procedure. Defendants maintained that the samples were to be "as received" for testing, while plaintiff contended that the samples were to be "air dried" for testing. The court had to end this dispute and enforce its judgment. Therefore, the court entered the April 8, 1977 order, to again enforce the judgment.

Under Montana law, a District Court has the jurisdiction to enter any necessary orders to enforce its judgments. This Court has said, quoting with approval from 49 C.J.S., Judgments, §585:

> "'Every court has inherent power to enforce its
> judgments and decrees, and to make such orders
> and issue such process as may be necessary to
> render them effective, and this power is not
> affected by the fact that the decree is final.'"
> Fuller v. Gibbs (1948), 122 Mont. 177, 183, 199
> P.2d 851.

We hold that this inherent power of the court to enter such orders as are necessary to enforce a judgment is not to be limited by the time limits in Rules 59 and 60, M.R.Civ.P. That is because such orders are interlocutory orders, and not final ones.

> " * * * So long as a court has jurisdiction over
> an action, it should have plenary power over
> its interlocutory orders and should be able to
> revise them when it is consonant with justice
> so to do. Court control over an interlocutory
> order should not be subject to the restrictions
> of Rule 60(b)." 7 Moore's Federal Practice
> ¶60.20, p. 242.

Both orders were entered to enforce the court's judgment that plaintiff was entitled to remove peat that was 60 percent organic. The first order, October 6, 1975, did not obtain the result it was intended to. This necessitated the court's revising this order on April 8, 1977, which was designed to enforce

the judgment and end the dispute between these parties.

A court must be able to enforce its judgments. A party that has obtained judgment in his favor must be able to obtain enforcement of the judgment. This power of the court and right of a party are not to be frustrated by the time limits in the Rules of Civil Procedure.

Accordingly, the order of the District Court is affirmed.

_Frank F. Haswell_
Chief Justice

We concur:

_Gene B. Daly_

_John Conway Harrison_

_Daniel J. Shea_

_John C. Sheehy_
Justices

- 6 -